```
                UNITED STATES DISTRICT COURT
                   DISTRICT OF NEW JERSEY
```

| | | |
|---|---|---|
| ANNA R. MCKENNA, | : | HONORABLE JOSEPH E. IRENAS |
| Plaintiff, | : | Civil Action No. 05-6021 (JEI) |
| v. | : | |
| | : | **OPINION** |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | : | |
| Defendant. | : | |

**APPEARANCES:**

WOLF AND BROWN L.L.C.
By: Phillip Wolf, Esq.
228 Kings Highway East
Haddonfield, NJ 08033
    Counsel for Plaintiff

CHRISTOPHER CHRISTIE, UNITED STATES ATTORNEY
By: Vernon Norwood, Esq.
Special Assistant U.S. Attorney
Social Security Administration
26 Federal Plaza, Room 3902
New York, NY 10278-0004
    Counsel for Defendant


**Irenas**, Senior District Judge:

　　Anna R. McKenna ("McKenna") brings this action pursuant to Section 205(g) of the Social Security Act.  42 U.S.C. § 405(g).  She is seeking review of the Commissioner of Social Security's final determination which denied her application for Social Security Disability Insurance Benefits.

I.

On February 15, 2002, McKenna filed an application for Disability Insurance Benefits with the Social Security Administration (the "SSA").  (R. at 14.)  She claimed that she became disabled and stopped working on June 15, 2000.  (R. at 15.)  The SSA denied her claims and found that she was not disabled.  (R. at 26.)  McKenna then filed a request for reconsideration.  After independently reviewing her claim, the SSA found the previous determination was proper under the law. (R. at 33.)

McKenna appealed the denial of the claims and filed a timely request for a hearing.  She appeared and testified before Administrative Law Judge Daniel N. Shellhamer ("ALJ") on November 18, 2004, in Voorhees, New Jersey.  (R. at 14.)  The ALJ found she was not disabled within the meaning of the Social Security Act.  (R. at 20.)  McKenna then filed a request for Appeals Council Review.  The Appeals Council denied her request for review.  (R. at 4.)  She then timely commenced this action.

II.

McKenna is a sixty-three year old woman who is 5 feet 3 inches and weighs approximately 180 pounds.  (R. at 248.)  She has a high school education and worked full time from 1979 to 1996 in retail as a section merchandiser, where she stocked

shelves, ordered merchandise, and frequently lifted boxes of approximately 10 pounds. (R. at 54, 59.) In 1996, she took a job as an appointment setter, reducing her hours to part-time, working four hours a day, four days a week. (R. at 54.) McKenna described her duties as "light office work," including making telephone calls, keeping files and scheduling appointments. (R. at 255.)

McKenna's application to the SSA stated that she was unable to work since June 15, 2000 due to scoliosis and arthritis which inhibited her ability to sit or stand for long periods of time. (R. at 53.) She also stated that she was in pain when climbing stairs and was prone to spasms in her hip and back. (*Id.*)

The record reflects extensive medical assessments of McKenna's medical history and conditions. McKenna's primary physician, Dr. Martin J. Kessler, sent her to Booth Radiology to conduct an MRI after she complained of pain in the right knee and low back. (R. at 176-77.) McKenna's MRI, performed on September 6, 2002, indicated moderate to advanced degenerative disc disease at L1-2 through L4-5 and scoliosis with curvature of the lower lumbar spine toward the right. (R. at 171, 174, 240.) The MRI of the right knee showed mild joint effusion and advanced degenerative change. (R. at 171.)

Dr. Kessler referred McKenna to Dr. Thomas P. Obade, an orthopaedic specialist, for severe degenerative joint disease of

3

the right knee.  (R. at 177.)  Dr. Obade found that the MRI of the lumbar spine performed on September 6, 2002, showed multi-leveled degenerative changes, scoliosis, facet arthropathy, posterior element hypertrophy with mild spinal stenosis at L2-3 and multiple neural formaminal stenosis.  (R. at 154.)  Dr. Obade also reported that the MRI of the right knee showed multiple findings all consistent with degenerative disc disease of the knee.  (*Id.*)

McKenna was also seen by Dr. Andrew Herman, a chiropractor, on a monthly basis since 1989.  Dr. Herman's medical report in March, 2002, shows that he diagnosed her with lumbar sublaxation, treated by gentle spinal manipulation.  (R. at 128.)  McKenna's examination showed a restricted range of motion in the lumbo-sacral spine and paravertebral muscle spasm in this region.  (*Id.*)  Dr. Herman made a medical assessment of McKenna's ability to do work-related activities in November of 2003.  He found that her ability to lift was limited to frequently lifting a maximum of 10 pounds and occasionally lifting a maximum of 15 pounds.  (R. at 156.)  Based on an eight-hour work day, Dr. Herman assessed McKenna's ability to be standing for one hour, sitting for two hours, occasionally balancing, and never climbing, stooping, crouching, kneeling or crawling.  (R. at 157.)  He also found that McKenna's environmental restrictions limited the patient from performing "anything strenuous."  (R. at 158.)

McKenna was referred to the New Jersey Division of Disability Determination Services. On May 31, 2002, Dr. Arthur I. Marks, D.O., performed an orthopedic consultative examination on McKenna. (R. at 129) His assessment showed that McKenna had moderately severe compound kyphoscoliosis, degenerative joint disease of the lumbar spine, both hips, and the right knee, symptom magnification behavior, a history of hypercholesterolemia and hypertension, and osteoporosis. (R. at 132-33.) Dr. Marks noted that the patient first discovered she had scoliosis 20 years prior to the examination and began feeling symptoms 12 years prior. (R. at 129.) Her complaints include chronic upper and lower back pain, recurrent spasms in the right posterior hip area, stiffness in the back, inability to sit or stand for too long, inability to walk more than a few blocks, and difficulty descending stairs. (*Id.*)

Dr. Marks' assessments were supported by his review of the medical records. He examined McKenna's x-rays from May 25, 2000, which showed moderately severe scoliosis and degenerative lumbar changes. (R. at 130.) The hip x-rays indicated mild degenerative joint disease of both hips, and the right knee x-ray from August 27, 2000, showed moderately severe narrowing of the medial joint space and moderate degenerative joint disease at the patellofemoral joint. (*Id.*) McKenna was currently prescribed

600 mg of Ibuprofen taken twice daily for pain, Evista for osteoporosis, Avapro for high blood pressure, Lipitor for high cholesterol, Fosamax for hip and spine osteoporosis, and Cyclobenzaprine when needed for muscle spasms. (R. at 130.) Dr. Marks also noted that McKenna said that she cooks and does light housework, but avoids activities that require kneeling, standing or walking too long. (R. at 131.)

Dr. Marks performed a physical examination of McKenna and observed that she ambulated without a limp or use of an assistive device or support. (*Id.*) She also appeared comfortable seated on the examination table, but was unable to lie supine and was cautious when changing positions. (*Id.*) Dr. Marks observed no palpable spasms, and normal ranges of motion in the cervix, elbows, hands and wrists. (*Id.*) McKenna reported no problems with handling papers or buttons, and her fine and gross manipulations were normal. (*Id.*)

McKenna's ability to forward flex the lumbar spine was limited to 45 degrees while in a standing position and there was a rib hump on the left side. (R. at 131.) The paravertebral lumbar muscles were hypertonic, tight and tender. (*Id.*) However, the sitting root test was negative to 85 degrees[1] and

---

[1] In sitting root test, the patient sits on a chair with his or her neck flexed. "The examiner extends the knee on the affected side up to ninety degrees. Low back pain and radiation of the pain indicate the test is positive. This test places abnormal tension on the Sciatic Nerve and patients with true Sciatica will tend to arch backwards and complain of radicular pain. A malingerer will not complain of any symptoms." Shaw

the trunk torsion simulation test was negative.  (*Id.*)  The axial loading simulation[2] and trunk flexion simulation were positive.  (R. at 132.)  McKenna was able to perform tandem gait and walk on her heels and toes.  (*Id.*)  She had slightly more restricted motion of the right knee (0-130 degrees) compared to the left (0-140 degrees).  (*Id.*)  Her right knee was swollen and warm with tenderness over the patellofemoral joint.  (*Id.*)  Dr. Marks also found that the internal rotation of both hips was only 5 degrees, external rotation was 45 degrees, and abduction was painful at 30 degrees bilaterally.  (*Id.*)

On June 21, 2002, Dr. Alenich, M.D., of the New Jersey Division of Disability Services prepared a Residual Functional Capacity Assessment for McKenna.  His diagnosis was scoliosis and degenerative joint disease.  (R. at 137.)  The assessment showed McKenna had the capacity to lift or carry twenty pounds

---

Chiropractic Group, Information for Attorneys Exam Glossary: Routine Examinations and Their Significance, http://www.shawchiropractic.com/attorneys/MORE_glossary.htm.

[2] In an axial loading test, "the examiner places pressure on the standing patient's skull.  If the patient reports low-back pain, the Waddell sign is positive." *Wick v. Barnhart*, 173 Fed. Appx. 597 (Or. 2006)(citing Waddell et al., *Nonorganic Physical Signs of Low-Back Pain*, 5 Spine 117, 118 (Mar.-Apr. 1980)).  A positive Waddell sign indicates nonorganic sources of lower back pain caused by malingering or psychological conditions.  *See* Gordon Waddell et al., 5 Spine at 117-25 (Mar.-Apr. 1980).  However, only a finding of three or more positive Waddell signs is "clinically significant."  Waddell et al., 5 Spine at 118.

occasionally and ten pounds frequently.  (R. at 138.)  He further found that she could stand or walk for at least two hours and sit for about six hours in an 8-hour work day with normal breaks.  (*Id.*)  Dr. Alenich also found that McKenna had an unlimited ability to push and pull, including the operation of hand and foot controls.  (*Id.*)  He also reported that McKenna could occasionally climb ramps and stairs, balance, stoop, and kneel, but that she could never crouch or crawl.  (R. at 139.)  The only environmental limitation noted was the avoidance of hazards, such as heights and machinery.  (R. at 141.)

At the administrative hearing, McKenna testified that she could no longer walk the two blocks she could have walked in 2000 in order to get to work and that she could presently walk only about a block, but it bothers her to do so.  (R. at 250, 253-54).  She claimed to have a burning sensation in the left side of her back that moves down to the top of her left leg which has become progressively worse in the last four years.  (R. at 249, 251.)  She said that her visits to her chiropractor, Dr. Herman, for spinal manipulation have helped.  (R. at 266-67.)  After knee replacement surgery and physical therapy, McKenna testified her right knee "felt pretty good," and at the time of the hearing it felt "good," claiming that "My knee is okay."  (R. at 270.)

McKenna also testified about her past relevant work at the administrative hearing.  She said that she began working part-

time at Best Uniform because her whole body, particularly her back, "hurt too much" and after four hours she "couldn't wait to get out of there." (R. at 261.) However, she said while at work she was able to move around because she had a "cubby hole office." (R. at 262.) Furthermore, she did not recall alerting her supervisor of her impairment. (*Id.*)

### III.

This Court reviews the decision of the ALJ to determine whether substantial evidence on the record supports the ALJ's decision. *See* 42 U.S.C. § 405(g); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (citing *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994)). Any finding of fact made by the ALJ shall be conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate." *Plummer*, 186 F.3d at 427. "It is more than a mere scintilla of evidence, but may be less than a preponderance." *Woody v. Secretary of HHS*, 859 F.2d 1156, 1159 (3d. Cir. 1988) (citing *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988)). Therefore, the issue before the Court is whether the ALJ's decision that McKenna was not disabled, and hence not entitled to disability insurance benefits, is supported by substantial evidence.

### IV.

### A.

The Social Security Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The SSA uses a five-step sequential evaluation process to determine whether an individual is disabled. 20 C.F.R. § 404.1520. The Third Circuit has recognized the evaluation process as described in *Plummer v. Apfel*.

> The Social Security Administration has promulgated regulations incorporating a sequential evaluation process for determining whether a claimant is under a disability. 20 C.F.R. § 404.1520; *Williams v. Sullivan*, 970 F.2d 1178, 1180 (3d Cir. 1992). In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S. Ct. 2287, 2290-91, 96 L.Ed.2d 119 (1987). In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe", she is ineligible for disability benefits.
>
> In step three, the Commissioner compares medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the

10

>     analysis proceeds to steps four and five.  Step four
>     requires the ALJ to consider whether the claimant
>     retains the residual functional capacity to perform her
>     past relevant work. 20 C.F.R. § 404.1520(d).  The
>     claimant bears the burden of demonstrating an inability
>     to return to her past relevant work. *Adorno v. Shalala*,
>     40 F.3d 43, 46 (3d Cir. 1994).
>
>     If the claimant is unable to resume her former
>     occcupation, the evaluation moves to the final step.

*Plummer*, 186 F. 3d at 428.

### B.

ALJ Shellhamer held that McKenna was not entitled to a period of disability for Disability Insurance Benefits under Sections 216(I) and 223 of the Social Security Act.  (R. at 21.) The ALJ followed the five-step evaluation process of the SSA and found McKenna's impairments were not sufficient to establish "disability."  (R. at 19.)  After reviewing the record, this Court holds that the ALJ's finding, that McKenna had the capacity to perform sedentary work, was supported by substantial evidence.

In the first step, the ALJ correctly found that McKenna had not been performing any substantial gainful activity.  McKenna terminated her employment June 15, 2000.  (R. at 53.)  She had not been engaging in any "significant physical or mental activities" for "pay or profit" since that time.  20 C.F.R. § 404.1572.

The ALJ then found in the second step that McKenna's

impairment was "severe." (R. at 15.) The SSA characterizes an impairment or combination of impairments as severe if it "significantly limits the claimant's physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520. The ALJ determined that McKenna's impairments, including degenerative disc disease, kyphoscoliosis and status post right knee arthroplasty, are "severe" within the meaning of the Social Security Act. (R. at 15.) McKenna's impairments amounted to more than a slight abnormality because they affected her ability to walk distances, stand and sit for periods of time, and restricted her ability to climb, stoop, crouch, kneel or crawl. (R. at 157.) Therefore, the ALJ correctly concluded her impairments were severe.

Step three determines whether the claimant's impairments are listed in or equal to the Listing of Impairments. The impairment must meet all of the criteria in the listing in order to qualify as a disability. 20 C.F.R. § 404.1525(c)(2). The ALJ found that McKenna's impairments "did not meet the requirements set forth in the Listing of Impairments" and noted that "no treating or examining physician has mentioned finding equivalent in severity to the criteria of any listed impairment."[3] Plaintiff's moving

---

[3] Although the ALJ does not specifically list which part of Appendix 1 of Part P the claimant's impairments do not meet, McKenna's impairments as shown through the medical findings do not meet all of the necessary requirements for a disability of the musculoskeletal system. The medical findings do not support the notion that she is unable to ambulate effectively and her impairments do not meet all the criteria for disorders of the spine.

brief does not dispute the ALJ's findings in the first three steps.

In step four, the ALJ determined McKenna's residual functional capacity ("RFC"). RFC determines the most that a claimant can still do despite her limitations based on the relevant evidence in the record. 20 C.F.R. 404.1525(a). This evidence includes symptoms, such as pain, and the extent to which such symptoms can reasonably be accepted as consistent with medical evidence, such as Dr. Marks' and Dr. Kessler's findings, and other evidence, such as Dr. Herman's findings. 20 C.F.R. § 404.1529(a). The ALJ found that McKenna had the residual functional capacity to lift and carry up to ten pounds frequently, sit for about six hours, and stand and/or walk for about two hours in an eight hour work day. (R. at 20.)

McKenna's argument that the ALJ failed to give adequate weight to Dr. Herman's reports and opinions carries little weight. A state agency medical consultant directly participated in determining whether the claimant's impairment could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. § 404.1529. The ALJ found Dr. Herman's findings to be inconsistent with the preponderance of medical evidence and gave them little significance. (R. at 16.) Although Dr. Herman treated McKenna once a month at his chiropractic facility, he does not qualify as

---

20 C.F.R. § 404, Subpt. P, App. 1, § 1.04.

a treating physician under 20 C.F.R. § 404.1513(a). Rather, chiropractors are treated as "other sources" to show the severity of the impairment and how it affects the patient's ability to do work. 20 C.F.R. § 404.1513(d), *see also Alexander v. Shalala*, 927 F. Supp. 785 (D.N.J. 1995). Therefore, the ALJ properly afforded Dr. Herman's findings little weight when the findings were merely "other evidence" and they contradict medical evidence.

McKenna also argues that the ALJ failed to give adequate consideration to the reports and findings of Dr. Obade. However, the ALJ fully addressed Dr. Obade's findings. (R. at 18.) In assessing McKenna's RFC, the ALJ addressed the evidence presented by Dr. Obade. The ALJ acknowledged Dr. Obade's findings of both the spine and right knee upon both physical examination and review of the MRIs. (R. at 18.) Furthermore, the ALJ reviewed the post-operation notes and found that McKenna's right knee arthroplasty was successful. (*Id.*) This evidence is also supported by McKenna's testimony at the administrative hearing that her knee was "okay." (R. at 270.) Therefore, Plaintiff's argument concerning Dr. Obade's findings must fail.

Furthermore, McKenna contends that the ALJ failed to give adequate consideration to the objective evidence of the record which supports her statements concerning the pain and limitation of her function. The objective evidence of all the physicians'

findings, including her ability to walk, stand, lift and carry weight, was taken into consideration when assessing McKenna's impairments and complaints. The ALJ found her right knee and hip improved after physical therapy in January and February of 2002 and she reported minimal functional limitations. (R. at 16.) Furthermore, in March of 2003, Dr. Obade reported that after surgery and additional physical therapy, McKenna reported satisfactory progress and no significant pain. (R. at 18.) The ALJ properly reviewed all of the objective evidence and gave proper weight to the medical findings and other evidence.

McKenna also challenges the ALJ's determination of her residual functional capacity, claiming Dr. Marks' evaluation is not substantial evidence to support the ALJ's decision. Dr. Marks' evaluation is consistent with that of McKenna's primary physician, Dr. Kessler, and orthopedic surgeon, Dr. Obade. All three physicians found that McKenna had moderately advanced scoliosis and degenerative joint disease. (R. at 130, 154, 171.) Therefore, Dr. Marks' evaluation, supported by Dr. Kessler's and Dr. Obade's findings, is substantial evidence in support of the ALJ's decision.

Finally, McKenna argues that the ALJ failed to conduct a proper evaluation of her subjective complaints in accordance with SSR 96-7. Statements of the claimant's symptoms, such as pain, and descriptions about how such symptoms affect Plaintiff's daily

activities do not alone establish disability unless they are supported by medical signs, laboratory findings and other evidence. 20 C.F.R. § 404.1528(a). The medical signs and laboratory findings "must show the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529.

The ALJ found that McKenna's subjective complaints were not "persuasive" to establish disability. (R. at 18.) In addressing the claimant's subjective allegations, the ALJ considered the nature, location, onset, duration, frequency, radiation, and intensity of the pain. (R. at 18.) He also gave consideration to what precipitating and aggravating factors contributed to the McKenna's pain, such as walking, climbing stairs, and kneeling. (*Id.*) The ALJ also looked at how McKenna sought to relieve the pain, through both medication and treatment, such as physical therapy, and what daily activities she was able to perform. (*Id.*) The ALJ then assessed the patient's subjective complaints in relation to physician's findings of impairments and determined her subjective complaints were not persuasive. (R. at 19.)

After full review of the record, the Court holds that the ALJ's determination is supported by substantial evidence. Although McKenna may experience discomfort throughout the day,

medication and physical therapy have afforded her some relief and she is still capable of performing moderate daily activities with a full range of motion in her upper body.  Furthermore, her testimony that she could only walk a block is inconsistent with medical evidence that she was capable of walking or standing for two hours in an 8-hour work day and other evidence from the physical therapist that she could walk continuously for 30 minutes.  (R. at 250, 138, 110.)

    McKenna is capable of returning to her previous sedentary work, especially considering her previous employment afforded her the ability to sit and stand as she pleased throughout the day.  The ALJ's determination that claimant is not disabled is supported by substantial evidence.

## V.

For the aforementioned reasons, the Court will affirm the final decision of the Commissioner denying McKenna's application for Disability Insurance Benefits.  The Court will issue an appropriate order.

Date: June 19, 2007

                                      s/*Joseph E. Irenas*
                               JOSEPH E. IRENAS, S.U.S.D.J.